## COURT OF APPEALS.

JOHN J. HAYES, plaintiff in error agt. THE PEOPLE, defendants in error.

In this state there may be a *valid marriage*, though not formally solemnized by a *clergyman*, or *consent declared before a magistrate*.

If parties competent to contract, in the presence of witnesses, agree together to be husband and wife, and afterwards cohabit and recognize each other as such, it is a sufficient marriage to sustain an indictment for *bigamy*, in the event of one of the parties having before that time married another, who is still living.

*September Term,* 1862.

WRIT OF ERROR to the supreme court, by the plaintiff in error, to bring up a conviction for bigamy.

JAMES T. BRADY, *for plaintiff in error.*
S. B. GARVIN, *for defendants in error.*

WRIGHT, J. To convict of bigamy, a marriage in fact must be proved, and reputation. and cohabitation alone are not sufficient. The fact of marriage may be proved by a witness present at the celebration, and this is the ordinary way of proving it. In this state marriage is a civil contract, and may exist without any formal solemnization by minister or magistrate.

The fact of the marriage of the prisoner to Sarah E. Blair in February, 1845, and that she was living at the time of the trial, was proved. To establish the fact of a second marriage in September, 1860, to Jane White, she was called and examined as the principal witness for the prosecution. She testified in substance, that the prisoner made her acquaintance in May, 1860, and that in August following, and whilst she was at work as a servant in a hotel at Middletown Point, they entered into an engagement to be married in September. She was to come to New York for that purpose at the expiration of her month's service. On the 12th September the prisoner met her at the steamboat landing in the city, and conducted her to a house in Thompson street, where he had taken rooms. That night she staid at her father's house in Brooklyn, and in the afternoon of the next day came over to the city and met the prisoner at the house in Thompson street. They were together until about seven o'clock in the evening, when the prisoner went out and returned in a few minutes with a person represented to be a minister. He was dressed like one, and had on a white necktie. She did not ask his name. The marriage ceremony was then

performed by this person. He used the'form of marriage of the Protestant Episcopal Church. He inquired of the witness if·she would take the prisoner for her husband, and she replied in the affirmative; and the prisoner was asked if he would have her for his wife, and upon his replying affirmatively, the minister declared them man and wife. The person officiating gave her a certificate, using a partly printed form, and filling in the blanks by writing. The certificate was taken by the prisoner and put in his trunk, and was afterwards seen by a sister of the witness when the parties were living together as man and wife. This marriage ceremony was followed by cohabitation, which continued for about a year.

It was shown by other witnesses that the prisoner called her his wife, and wrote letters to her as such, and admitted ·that he had been married to her in September, 1860.

If this evidence was to be credited, a marriage in fact, as contradistinguished from one inferrable from circumstances, was proved. It is true that the authority or official character of the person performing the marriage ceremony was not affirmatively shown, and there was some proof in the· case to excite at least a suspicion that the prisoner had procured the man who officiated, to falsely represent himself as a clergyman. If, however, to constitute a valid marriage, it must be solemnized by a minister or magistrate, the evidence was sufficient *prima facie* to prove a marriage in fact. A person appearing in the character of a clergyman performed the ceremony, using the marriage service of the Protestant Episcopal Church. The marriage was followed by cohabitation, and the prisoner distinctly admitted to others that he was married at the time. If the person officiating was not a clergyman it was for the prisoner to show that fact after a *prima facie'* case was made out against him. (*State* agt. *Rood,* 12 *Vt. Rep.,* 296; *Rex* agt. *The Inhabitants of Trampton,* 10 *East, R.,* 282.) But the

recorder was right in his charge to the jury. In this state there may be a valid marriage, though not formally solemnized by a clergyman, or consent declared before a magistrate. If parties competent to contract in the presence of witnesses agree together to be husband and wife, and afterwards cohabit and recognize each other as such, it is a sufficient marriage to sustain an indictment for bigamy, in the event of one of the parties having before that time married another, who is still living. It was not error, therefore, for the judge to instruct the jury that if the prisoner and Jane White agreed, in the presence of the man represented to be a minister, to be man and wife, and afterwards lived together as such, that was in the eye of the law a sufficient marriage to sustain an indictment for bigamy (the fact that the prisoner had before that time married Sarah E. Blair, and she was then living being admitted), and it was of no consequence whether the man represented to be a minister was such or not. It is only claimed that the latter branch of the charge is erroneous; but marriage in this state being a civil contract, and not requiring the intervention of minister or magistrate to make it legal, this part of the charge was manifestly correct.

The judgment of the supreme court and court of general sessions should be affirmed.